Lorinda Meier Youngcourt
Senior Litigator, IN 14411-49, WA 50998
Federal Defenders of Eastern WA & ID
601 W. Riverside Ave., Suite 900 | Spokane, WA 99201
(509) 624-7606 | Lorinda_Youngcourt@fd.org
Counsel for Andrea Lee Campos-Hernandez

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
The Honorable Thomas O. Rice, District Court Judge

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANDREA LEE CAMPOS-HERNANDEZ,<br><br>Defendant. | Case No. 2:24-cr-82-TOR<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>Sentencing Hearing – Spokane<br>Wednesday, August 26, 2026 at 9:30am |

ANDREA LEE CAMPOS-HERNANDEZ, by counsel Amy H. Rubin and Lorinda Meier Youngcourt of the Federal Defenders of Eastern Washington and Idaho, prays the Court will accept the Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement and impose the jointly recommended 180 month sentence.

Andrea appears before the Court having accepted responsibility for her extremely serious conduct involving a minor. Nothing in this memorandum is intended to minimize that seriousness, the age of the minor, or the harm inherent in an offense of this kind. The question at sentencing, however, is not only what happened, but also who Andrea is, what drove her conduct, what risk she poses going forward, and what sentence is necessary to protect the public, promote accountability, and reduce the likelihood of future harm.

According to the psychosexual evaluation of Robert L. Cosby, Psy.D., Andrea is not a person driven by deviant sexual interest in children, coercion, violence, or predatory compulsion. Rather, Dr. Cosby concluded that her conduct appears to have been tied to social immaturity, profound self-esteem deficits, emotional dependency, anxiety, depression, and a distorted understanding of the relationship she was in.

Those conclusions do not excuse the offense. They do matter, however, to just punishment, risk assessment, treatment, and the kind of sentence that best serves the public interest.

## I. The law governing sentencing.

Federal district courts are to impose sentences under a structured framework mandated by Congress and refined by the Supreme Court. The sentence must be "sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a), which include reflecting the seriousness of the

offense, promoting respect for the law, providing just punishment, affording adequate deterrence, protecting the public, and providing the defendant with needed correctional treatment. 18 U.S.C. §3553.

In determining the particular sentence, the court must consider the nature and circumstances of the offense and the history and characteristics of the defendant, the applicable Sentencing Guidelines range, any pertinent Sentencing Commission policy statement, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. §3553.

District courts must follow a mandatory two-step sentencing process. First, the court must correctly calculate the applicable Guidelines range, which serves as "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). Following *United States v. Booker*, the Guidelines are advisory only; a district court must consult and take them into account when sentencing, but is not bound to apply them. 543 U.S. 220 (2005). Failure to calculate the correct Guidelines range constitutes procedural error, and the district court's sentencing analysis must remain cognizant of the Guidelines throughout the sentencing process. *Peugh v. United States*, 569 U.S. 530, 543 (2013). Second, after determining the Guidelines range, the court must consider all of the § 3553(a) factors to determine whether they support the sentence requested. *Gall* at 50. The court may not presume that the Guideline range is reasonable but must make an individualized assessment based on the facts presented. *Id.*

A district court may impose a sentence outside the advisory Guidelines range when an individualized assessment of the case and consideration of the § 3553(a) factors support a different result. *Kimbrough v. United States*, 552 U.S. 85, 91 (2007).

## II. Step 1: Guideline calculations.

The parties agree with the Guideline calculations set out in the Presentence Investigation Report. The total offense level is 43.[1] Andrea has no prior criminal history and is therefore in criminal history category I.[2] The advisory guideline range is life.[3] Pursuant to USSG 5G1.1(a), that range must be adjusted by the statutory maximum sentence of 30 years, 18 U.S.C. §2251(e). Therefore, the guideline sentence is 30 years.

The parties are jointly recommending a variance from 30 years to 15.

## III. Step 2: Applying 18 U.S.C. § 3553.

### A. The nature and circumstances of the offense.

This crime was rooted in Andrea's immaturity, emotional dependency, and distorted relationship thinking rather than any deviant or predatory sexual interest in children. The psychosexual evaluation addresses the question that is often central in sex-offense sentencing: what motivated the conduct, and what does that say about future risk?

---

[1] PSIR, ¶ 52.
[2] PSIR, ¶ 58.
[3] PSIR ¶ 106.

Andrea met Minor 1 through his older sister, Andrea's best friend.[4] In the small town of Warden, older teens and young adults socially mixed with younger adolescents. Andrea's best friend would bring her 13 year old brother to young adult parties at which alcohol was present. Citing this fact during her psychological evaluation, socially immature Andrea blurred the norms for age-appropriate relationships. With her feelings of worthlessness, Andrea soaked up the attention of Minor 1 and rationalized that he was mature for his age.[5]

In February of 2021, Andrea and Minor 1 began kissing and touching. Minor 1 was 13 ½ years old and Andrea was 20 years old. Andrea encouraged the "secret relationship"[6] which progressed to sexual intercourse. As set out in the presentence report, several images of the two having sex were made with both of their cell phones and copies were found on both of their phones.

Andrea believed her relationship with Minor 1 was reciprocal. She loved Minor 1 and believed he loved her. Other than purchasing gifts – something adults in romantic relationships do for one another – there is no evidence of coercion, violence, or predatory manipulation.

The nature and circumstances of this offense support the variance to a 15-year sentence.

---

[4] Letter from Karely Garcia attached to PSIR; PSIR ¶ 11.
[5] *Id.,* p. 16-17.
[6] Exhibit A - Psychological evaluation by Robert L. Cosby, Psy.D, p. 7.

**B. Andrea's history and characteristics.**

Andrea was socially immature and struggling with low self-esteem and unmet emotional needs throughout the relationship with Minor 1.[7] In the years leading to the crime, Andrea had substantial mental health struggles including anxiety, depression, and passive suicidal ideation.[8] During this time, Andrea recorded her thoughts and feelings in a journal which was recovered by law enforcement during a search of her home.

In entries made as early as 2016 when she was 15 and 16 years old, she wrote of being "lost," broken, and feeling unwanted.[9] In 2017, she wrote about feeling "scared" to show her true self and attempting to meet the needs of others to acquire love and noticing that others did not do the same for her.[10] She wrote about being a disappointment to her family as she tried to excel in wrestling as other relatives had.[11] She included in the journal "a story about a young girl abused by her father, left by her mother, bullied at school, and wanting to run away. The story ended with the girl committing suicide through a medication overdose."[12]

---

[7] EX A (Psych evaluation), p. 23.
[8] *Id.,* p. 8.
[9] *Id.,* p. 10.
[10] *Id.,* p. 10.
[11] *Id.,* p. 11.
[12] *Id.*

In 2018, she wrote about no one seeing her suffering over being a "fuck up" that no one wanted to deal with. She spoke of a desire to feel loved and wanted.[13] Despite being on medication for anxiety in 2020 she continued to write about feeling "sad, depressed" and "like a waste of space, lonely, numb to the pain."

In 2020, there was a rupture in Andrea's family causing her to feel even more isolated and caught in the middle of her parents' marital problems. She withdrew from her family and began spending substantial time with her best friend's family, which put her in the sphere of Minor 1 at a time when she was exceptionally vulnerable.[14]

Testing by Dr. Cosby revealed no common variables between Andrea's interests and behaviors and those of known offenders involving manipulation, coercion, or force. Further, he found no evidence of psychopathy, antisocial personality traits, or aggressive attitudes and behaviors commonly associated with more dangerous offending populations.

Instead, Dr. Cosby repeatedly links the offense behavior to Andrea's emotional dependency and social immaturity. His report states that her involvement "appear[s] related to her social immaturity, low self-esteem, and unmet emotional needs." It further states that she viewed the minor as a peer, that her social environment blurred

---

[13] *Id.*
[14] *Id.,* p. 3.

age boundaries, and that she confused his attention and validation with attraction, love, and companionship. Dr. Cosby expressly concluded that Andrea's actions "did not appear to be motivated or influenced by sexually deviant interests" and instead "seemed related to unmet emotional needs and confusing a minor's attention and care for love and companionship."

**C. The sentence should reflect the seriousness of the offense, promote respect for the law, and provide just punishment.**

The parties agree that fifteen years of imprisonment adequately reflects the seriousness of the offense, promotes respect for the law and provides just punishment.

**D. The sentence should afford adequate deterrence and protect the public.**

The parties agree that fifteen years of imprisonment will deter any future conduct and protect the public. Dr. Cosby expressly found that Andrea does not suffer a paraphilic or pedophilic disorder. He found no indication that Andrea harbors deviant sexual interests. She has no history of sexual arousal to prepubescent children.

Fifteen years is an adequate amount of time for Andrea to reflect upon her illegal choices and actions as well as focus on her mental health issues which left her vulnerable to making those choices.

**E. The sentence should avoid unwarranted sentence disparities.**

The agreed upon sentence is consistent with other sentences meted out in factually similar cases in this jurisdiction.

## IV. Conclusion

ANDREA CAMPOS-HERNANDEZ requests the Court accept the plea agreement and impose the jointly recommended sentence.

Dated: August 20, 2026

*/s/ Lorinda Meier Youngcourt*
Lorinda Meier Youngcourt

## Certificate of Filing & Service

I certify that on August 20, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify all counsel of record.

*/s/ Lorinda Meier Youngcourt*
Lorinda Meier Youngcourt